**Rodolfo TERRAZAS, Plaintiff,**

**v.**

**MEDLANTIC HEALTHCARE GROUP, INC. d/b/a The Washington Hospital Center, Defendant.**

**Civil Action No. 97–2731(RMU).**

United States District Court, District of Columbia.

March 25, 1999.

Judith L. Walter, Vecchia & Wolfer, Washington, DC, for Rodolfo Terrazas, plaintiff.

Keith Jay Harrison, Christopher Flynn, King, Pagano & Harrison, Washington, DC, for Medlantic Healthcare Group dba Washington Hospital Center, defendant.

Anthony Walter Kraus, Miles & Stockbridge, Baltimore, MD, for Aetna Life Insurance Company, Atena Health Plans, defendants.

Anthony Walter Kraus, Miles & Stockbridge, Baltimore, MD, for

## MEMORANDUM OPINION

### Granting in Part and Denying in Part Defendant's Motion for Summary Judgment

URBINA, District Judge.

The above-captioned case was brought by the plaintiff, Rodolfo Terrazas, pursuant to the Rehabilitation Act of 1974 Section 504, as amended, 29 U.S.C. § 794, or alternatively the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213, seeking redress for injuries resulting from allegedly discriminatory treat-

ment.[1] The matter is currently before the court on the defendant's motion for summary judgment. Based on the record currently before it, the court concludes that the defendant has only partly demonstrated that it is entitled to judgment as a matter of law. Accordingly, the court will grant in part and deny in part the defendant's motion.

## I. BACKGROUND

In November 1971, Rodolfo Terrazas began working in the Clinical Laboratory of The Washington Hospital Center ("WHC"). In 1989, Mr. Terrazas transferred from a phlebotomy position to the central accessioning area of the laboratory and began working as an accessioning clerk ("central accessioning clerk"). In 1994, following two surgeries for non-work related automobile accidents, Mr. Terrazas was placed on consecutive medical leaves of absence for approximately seven months. Subsequently, Mr. Terrazas's neurosurgeon, Dr. Ferraz, submitted a Disability Certificate to the WHC stating that the plaintiff could return to work on September 25, 1994, and that he should "avoid lifting over forty pounds." (Def.'s Opp'n to Mot. for Summ.J. ¶ 10.)

Pursuant to the WHC's return to work policy, Mr. Terrazas assumed a vacant position in the accessioning area ("front desk position") upon returning to work on September 25, 1994. Between the period of March 2, 1995, and November 20, 1995, Mr. Terrazas was given several oral and written warnings concerning his job performance in the front desk position. Finally, on November 20, 1995, Mr. Terrazas's supervisor, Frank Beylo, discussed with the plaintiff the possibility of reassigning him to his former position as the central accessioning clerk. Mr. Terrazas stated that he would accept the reassignment; meanwhile, his performance problems in the front desk position continued.

On December 20, 1995, Mr. Beylo notified Mr. Terrazas that he would be transferred to the central accessioning position as soon as he (Mr. Terrazas) returned from his vacation leave. At this point, Mr. Terrazas raised for the first time to Mr. Beylo his concerns regarding his ability to perform the central accessioning position effectively. Mr. Terrazas felt that his back condition would inhibit his ability to walk and stand for long periods of time as the central accessioning position demanded. Accordingly, Mr. Beylo checked the WHC's records relating to the plaintiff and found no documentation of the plaintiff's disability except for the restriction placed on lifting anything over forty pounds. As a result and pursuant to the hospital's written standard practice, Mr. Beylo ordered a fitness for duty evaluation of Mr. Terrazas.

Pursuant to the fitness for duty examination, the Director of Managed Disability, Sylvia Pulley, requested Mr. Terrazas's physician to identify any physical limitations relating to the plaintiff's back surgery. Mr. Terrazas's family physician, Dr. Dylan Deardoff, stated that his restrictions included sedentary employment, no lifting of anything heavier than ten pounds, no standing for more than twenty minutes at a time, no squatting, no twisting and no reaching for more than fifteen minutes. Subsequently, Frank Beylo, Sylvia Pulley, and the Administrative Director of the Clinical Laboratory, Michelle Best, collectively determined that the plaintiff could not perform the essential functions of the central accessioning job with or without a

---

1. In his complaint, the plaintiff also claimed that the defendant "conspired to deny Plaintiff certain employee benefits to which he was entitled in violation [of] the Employee Retirement Income Security Act ("ERISA"), 42 U.S.C. § 1001, et seq." The plaintiff conceded in his Opposition to Defendant's Motion for Summary Judgment, however, "that he did not adduce sufficient evidence during discovery to support his claim of interference with benefit rights by Defendant Medlantic Healthcare Group, Inc." (See Pl.'s Opp'n to Mot. for Summ.J. at 1.) Consequently, summary judgment will be granted for the defendant on this claim.

reasonable accommodation because the essential functions of the job included constant standing, walking, reaching and twisting.

On February 1, 1996, Mr. Terrazas reported to work upon returning from vacation leave and was told that he had not been cleared to work because of his physical limitations. On the same day, Sylvia Pulley assisted Mr. Terrazas in applying for short-term disability benefits and arranged for him to apply for a leave of absence from the WHC. Mr. Terrazas was placed on a medical leave of absence until June 11, 1996, when he learned that he had been placed on "job search leave" effective May 22, 1996. Job search leave allowed Mr. Terrazas to apply for vacant positions within the hospital while maintaining his seniority and benefits and receiving a preference over non-WHC-employee applicants. During this time Mr. Terrazas was receiving long term disability benefit payments.

After Mr. Terrazas began receiving long term disability benefits he was contacted by Jonni Dougherty from Comprehensive Rehabilitation Associates. Ms. Dougherty told Mr. Terrazas that she was sent by Aetna Life Insurance Company ("Aetna") to assess his disabilities and restrictions. She further informed Mr. Terrazas that if he was going to receive the disability payments that were owed to him he would have to go on ten interviews a week with non-WHC employers. It is undisputed that this requirement was placed on Mr. Terrazas by Aetna and not the WHC. On September 22, 1996, Mr. Terrazas was hired on a full-time basis to work in a doctor's office for Dr. D'Amato.

According to the Collective Bargaining Agreement ("CBA") and the WHC leave of absence policy, an employee who accepts full-time employment outside of the WHC while on leave terminates his employment. The WHC stated in its files that Mr. Terrazas terminated his employment with the hospital when he accepted full-time employment with Dr. D'Amato. In Decem-

ber 1996, the plaintiff resigned from his position with Dr. D'Amato. At that time Mr. Terrazas filed a complaint with the Equal Employment Opportunity Commission ("EEOC") against the WHC alleging both disability and age discrimination. The EEOC found no evidence in support of his action and dismissed the charges. Consequently, Mr. Terrazas filed a complaint in this court alleging essentially that Defendant WHC: (1) engaged in disparate treatment by removing him from the front desk position ("claim 1"); (2) discriminated against him by failing to grant him the reasonable accommodation of restructuring the central accessioning clerk position to accommodate his physical limitations ("claim 2"); and (3) discriminated against him by failing to grant him the reasonable accommodation of reassignment to either (a) the front desk position ("claim 3(a)") or (b) some other vacant position ("claim 3(b)"), the eventual result of which was termination of his employment.

## II. LEGAL STANDARD

### A. Summary Judgment

The defendant in this action has filed a motion for summary judgment. Summary judgment is appropriate upon a finding that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The substantive law upon which a claim rests determines which facts are "material." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If a fact bears upon an essential element of the legal claim, then it is material; otherwise, it is not. *See id.; Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Only disputes over facts that can establish an element of the claim, and thus might affect its ultimate resolution, can create a "genuine issue" sufficient to preclude summary judgment. *See Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

To prevail on a motion for summary judgment, the moving party bears the burden of establishing that there are no genuine issues of material fact and that the nonmoving party has failed to offer sufficient evidence to support a valid legal claim. *See Anderson,* 477 U.S. at 256, 106 S.Ct. 2505; *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. In ruling on the motion, the court must accept the evidence of the nonmoving party as true and must draw all justifiable inferences in favor of the nonmoving party. *See Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. It is not sufficient, however, for the nonmoving party to establish "the mere existence of a scintilla of evidence in support of the [nonmoving party's] position . . .; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Id.* at 252, 106 S.Ct. 2505. If the evidence in favor of the nonmoving party "is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50, 106 S.Ct. 2505 (internal citations omitted). Because the court rules that the defendant is entitled to partial judgment as a matter of law, its motion for summary judgment will be granted in part and denied in part. Specifically, the court will grant the defendant's motion for summary judgment as to claims 1, 2 and 3(a) above and will deny summary judgment as to claim 3(b).

## B. The Americans with Disabilities Act and the Rehabilitation Act

### 1. Disparate Treatment Claims

Claim 1 of the plaintiff's complaint alleges disparate treatment on the part of the defendant. Disparate treatment disability discrimination claims are analyzed under the three-part burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Aka v. Washington Hosp. Ctr.,* 156 F.3d 1284, 1288 (D.C.Cir.1998). Under the *McDonnell Douglas* framework, the plaintiff "must carry the initial burden . . . of establishing a prima facie case of . . . discrimination."

*McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. To establish a prima facie case here, Mr. Terrazas must demonstrate that he (1) belongs to a protected class, (2) was qualified for the job he held (i.e., the front desk position), and (3) was removed from the position despite his qualifications. *See id.*

Once the plaintiff has established a prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reasons for the challenged employment decision." *Aka,* 156 F.3d at 1288 (citing *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817). This is simply a burden of production, not one of proof. *See Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 255, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). "If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity." *Id.* (footnotes omitted).

Once the defendant has stated a legitimate, nondiscriminatory reason for its decision, the burden shifts again to the plaintiff. At this stage the plaintiff is afforded "an opportunity to discredit the employer's explanation." *Aka,* 156 F.3d at 1288. To do so, the plaintiff must establish "by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for [intentional] discrimination." *Burdine,* 450 U.S. at 253, 101 S.Ct. 1089. The plaintiff must establish both that the reason is false and that discrimination was likely the real reason. *See Aka,* 156 F.3d at 1290–1294 (interpreting *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)).

### 2. Reasonable Accommodation Claims

Claims 2, 3(a) and 3(b) of the plaintiff's complaint allege discrimination on the part of the defendant for failing to reasonably accommodate the plaintiff's disability. To prevail on a claim of reasonable accommo-

dation disability discrimination, the plaintiff must show that he is "(1) a handicapped person that (2) with reasonable accommodation can (3) perform the essential functions of the position he holds or seeks." *Johnson v. Brown*, 26 F.Supp.2d 147, 149 (D.D.C.1998) (citing *Barth v. Gelb*, 2 F.3d 1180, 1186 (D.C.Cir.1993)). It is up to the employer to dispute this evidence. "The [ultimate] burden, however, remains with the plaintiff to prove his case by a preponderance of the evidence." *Barth*, 2 F.3d at 1186.

## III. DISCUSSION

At the outset, the court will address the motions filed by the parties that are ancillary to the defendant's motion for summary judgment. On September 22, 1998, Mr. Terrazas filed a motion with the court seeking relief from the defendant's use of an affidavit of Terra Cox because Ms. Cox was apparently not made available to the plaintiff for a deposition. Because the court did not consider Ms. Cox's affidavit in reaching a decision on summary judgment, Mr. Terrazas's motion will be denied as moot. Additionally, on November 30, 1998, the WHC filed a motion to strike or, in the alternative, for leave to respond to the plaintiff's supplemental briefing concerning recent cases that were brought to the court's attention. While the court was independently aware of and reviewed the recent cases, it did not consider the supplemental briefs filed by either party. Therefore, the WHC's motion will also be denied as moot.

### A. Exhaustion

■ The defendant raises the argument that summary judgment is appropriate because the plaintiff did not exhaust the CBA's grievance procedures, which contain an arbitration clause. Recently the Supreme Court of the United States, in *Wright v. Universal Maritime Serv.*, — U.S. ——, 119 S.Ct. 391, 142 L.Ed.2d 361 (1998), stated that an employee will not be held to an arbitration clause in a CBA

unless it contains a "clear and unmistakable waiver of the covered employees' rights to a judicial forum for federal claims of employment discrimination." *Id.* at 397, 119 S.Ct. 391. Under this standard, summary judgment is not appropriate in this case based on the defendant's exhaustion theory because the CBA at issue does not contain a clear and unmistakable reference to waiving one's right to pursue federal claims of discrimination.

### B. Disparate Treatment

#### 1. Claim 1: Removal from Front Desk Position

■ Mr. Terrazas's first claim of discrimination is one alleging disparate treatment on the part of the defendant for removing him from the front desk position. In support of its motion for summary judgment the WHC argues that it did not have actual or constructive notice of Mr. Terrazas's disability at the time he was removed from the position. Section 504 of the Rehabilitation Act and the analogous provision of the ADA, 42 U.S.C. § 12112(a), prohibit "only discriminatory acts performed solely by reason of the plaintiff's handicap. The courts of appeals have overwhelmingly agreed that for this causal link to be shown the employer must have acted with an awareness of the disability itself. . . ." *Crandall v. Paralyzed Veterans of America*, 146 F.3d 894, 896–97 (D.C.Cir. 1998); *see Kalekiristos v. CTF Hotel Management Corp.*, 958 F.Supp. 641, 657 (D.D.C.1997) ("A person alleging a disability protected by the ADA has a burden of establishing with medical evidence the existence of the alleged disability, and presenting the documentation during the term of employment, not following termination."). Absent any indications to the contrary, Mr. Terrazas's employer assumed that he was physically able to perform his duties at the hospital upon his return to work in September 1994. The only evidence in the record of actual notice of any physical limitations given by Mr. Terrazas to his employer is a note from his

physician stating that he could not lift over forty pounds. Based on the limited information presented to the WHC by Mr. Terrazas, the court concludes that the WHC could not have known about Mr. Terrazas's extensive long term disabilities prior to making its decision to remove Mr. Terrazas from the front desk position. Accordingly, the court rules that the defendant could not have engaged in discriminatory disparate treatment of Mr. Terrazas when it removed him from the front desk position.

■ Even if the court assumed the defendant was on notice that Mr. Terrazas had a disability, Mr. Terrazas would still be unable to survive a motion for summary judgment on this claim because he has failed to meet his burden under the *McDonnell Douglas* burden-shifting framework. As explained above, to meet his burden and avoid summary judgment on this disparate treatment claim, Mr. Terrazas would have to establish that he was qualified for the front desk position. Here, however, it is undisputed that Mr. Terrazas had severe performance problems while in the front desk position. Mr. Terrazas himself admits that he suffered from performance problems which could have "compromised the well-being" of the patients at the hospital and that he was reprimanded on several occasions during his time in the front desk position. (*See* Def.'s Mot. for Summ.J., Ex. 1 at 73: *see also* Def.'s Mot. for Summ.J., Ex. 8–17, 19, 43.) Consequently, the court concludes that Mr. Terrazas has failed to offer sufficient evidence to establish a prima facie case of discriminatory disparate treatment on the basis of his removal from the front desk position. Accordingly, the defendant is entitled to summary judgment with respect to claim 1 of the plaintiff's complaint.

### C. Reasonable Accommodation

#### 1. Claim 2: Failure to Restructure Central Accessioning Position

■ Mr. Terrazas's remaining claims allege discriminatory failure to provide reasonable accommodations. Specifically, claim 2 alleges that the WHC discriminated against Mr. Terrazas by failing to restructure the central accessioning position to accommodate his physical limitations. In order to survive summary judgment as to this claim, Mr. Terrazas has the burden of establishing that (1) he is handicapped but (2) with reasonable accommodation he is (3) able to perform the essential functions of the central accessioning position. *See Barth,* 2 F.3d at 1186. "Courts defer to the employer's judgment as to what functions of a job are essential." *Kalekiristos,* 958 F.Supp. at 660.

■ The WHC is entitled to summary judgment on this claim because Mr. Terrazas has failed to demonstrate that he could perform the essential functions of the central accessioning position even with a reasonable accommodation. The WHC's description of the central accessioning position states that employees must have "physical stamina for *constant* walking and standing." (*See* Def.'s Mot. for Summ.J., Ex. 4 (emphasis added).) Mr. Terrazas agreed during his deposition that there was a great deal of standing and walking required in order to perform the functions of the central accessioning position. He stated that "[y]ou have to stand and go from one counter to the other constantly and process the specimens, separate it, and dispose of whatever you needed to dispose of. You couldn't be sitting down." (*See* Deposition of Rodolfo Terrazas at 67.) In addition, Mr. Terrazas stated that he was incapable of standing for an entire eight hour shift. (*See* Deposition of Rodolfo Terrazas at 286.) Finally, in Mr. Terrazas's requests for medical leave he stated that the reason for the leave of absence was that "physical limitations as stated on physician's certification prevent [him] from performing [his] newly assigned job description." (*See* Def.'s Mot. for Summ.J., Ex. 23.) Consequently, based on Mr. Terrazas's own deposition testimony, the court concludes

that he could not have performed the essential functions of the central accessioning position even with a reasonable accommodation.

Moreover, any steps that the WHC might have taken to accommodate Mr. Terrazas in the central accessioning position would have been unreasonable. The duties of the central accessioning position require constant standing, walking, reaching and twisting. In order to accommodate Mr. Terrazas in this position, the WHC would have had to reassign the primary functions of the position to other employees in the hospital. "Under the ADA's scheme ... it is discriminatory for a covered employer to decline to take reasonable steps to accommodate an employee's disability, *unless the steps in question 'would impose an undue hardship on the operation of the business' of the employer." Aka,* 156 F.3d at 1300 (quoting 42 U.S.C. § 12112(b)(5)(A)) (emphasis added). The "ADA does not require an employer 'to reallocate job duties in order to change the essential function of a job.'" *Soto-Ocasio v. Federal Express Corp.,* 150 F.3d 14, 20 (1st Cir.1998) (quoting *Milton v. Scrivner Inc.,* 53 F.3d 1118, 1124 (10th Cir.1995)). Because the WHC would have had to reallocate, at a minimum, the standing and walking requirements of the central accessioning position in order to accommodate Mr. Terrazas, an accommodation within the central accessioning position would have imposed an undue hardship on the WHC. Consequently, the court concludes that such an accommodation was not required by the ADA. Accordingly, summary judgment will be granted for the defendant on claim 2 of the plaintiff's complaint.

### 2. Claim 3(a): Reassignment to Front Desk Position

Mr. Terrazas's final two claims allege that the WHC discriminated against him by assigning him to "job search leave" instead of granting him the reasonable accommodation of automatic reassignment to either (a) the front desk position or (b) some other vacant position in the hospital. In claim 3(a) Mr. Terrazas asserts that he should have been reassigned to the sedentary front desk position when it was determined that he could not perform the functions of the central accessioning position. 42 U.S.C. § 12111(9) states that "[t]he term 'reasonable accommodation' may include ... reassignment to a vacant position." *Aka,* 156 F.3d at 1300. As stated above, however, the ADA only requires an employer "to take reasonable steps to accommodate an employee's disability" and does not mandate accommodations that "would impose an undue hardship on the operation of the business of the employer." *Id.*

Because Mr. Terrazas was removed from the front desk position for performance problems, the court concludes that it would have constituted an undue hardship to require the WHC to reassign Mr. Terrazas to that position as an accommodation for his disability. Similar to his admission with regard to the central accessioning position, Mr. Terrazas admits that he could not perform the essential functions of the front desk position. Mr. Terrazas does not dispute that he had performance problems unrelated to his physical disabilities when he was previously assigned to the front desk position. Notably, the plaintiff candidly admitted that his performance problems in the front desk position put patients at risk. Consequently, because the plaintiff cannot seriously contest his inability to perform the essential functions of the front desk position irrespective of his physical disability, any accommodation the WHC would have had to make to tailor that job's duties to the plaintiff's abilities would have constituted an undue hardship. Accordingly, the court will grant the defendant's request for summary judgment as to claim 3(a).

### 3. Claim 3(b): Reassignment to Vacant Position

In claim 3(b) Mr. Terrazas alleges that the WHC violated the Rehabilitation

Act or the ADA by not automatically reassigning him to a vacant position in the hospital. The court concludes that the record before it is insufficient to resolve this claim on summary judgment. Specifically, the record does not adequately address whether there were vacant positions in the hospital for which Mr. Terrazas was qualified or whether it would have caused an undue hardship for the hospital to transfer Mr. Terrazas into any other vacant position. *See Aka,* 156 F.3d at 1306 (stating that whether an employer had an "obligation under the ADA to reassign" an employee to a vacant position depends on "whether a vacant position for which [the employee] was qualified was available, and whether reassigning [the employee] would have been an undue hardship"). The court concludes, therefore, that a trial is necessary to adduce certain material facts including whether: (1) a vacant position existed; (2) Mr. Terrazas was qualified for any such vacant position; and (3) reassigning Mr. Terrazas would have caused the WHC undue hardship. Accordingly, on the limited issue of whether the WHC violated the Rehabilitation Act or the ADA by not automatically reassigning Mr. Terrazas to a vacant position *other than the front desk position,* i.e., claim 3(b) of the plaintiff's complaint, the court will deny the defendant's motion for summary judgment.

## IV. CONCLUSION

The court rules that the plaintiff in this action, Rodolfo Terrazas, has failed to meet his burden of establishing discrimination on the part of the defendant, The Washington Hospital Center, with respect to his allegations of: (1) disparate treatment in removing the plaintiff from the front desk position; (2) discriminatory failure to accommodate by restructuring the central accessioning clerk position; and (3) discriminatory failure to accommodate by reassigning the plaintiff to the front desk position. Accordingly, the court will grant the defendant's motion for summary judgment as to these claims. With respect to

the limited issue of whether the defendant should have reassigned Mr. Terrazas to some other vacant position within the hospital, the court concludes that there are genuine issues of material fact for trial. Thus, the court will deny the defendant's motion for summary judgment as to this issue.

An appropriate Order directing the parties in a fashion consistent with this Memorandum Opinion is separately and contemporaneously executed and issued this 25 day of March, 1999