# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued October 19, 2010          Decided December 21, 2010

No. 09-5319

LINDA SOLOMON,
APPELLANT

v.

THOMAS J. VILSACK, IN HIS OFFICIAL CAPACITY AS SECRETARY
OF AGRICULTURE,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:07-cv-01590)

———

*John F. Karl, Jr.* argued the cause and filed the briefs for appellant.

*Harry B. Roback*, Assistant U.S. Attorney, argued the cause for appellee.  With him on the brief were *Ronald C. Machen Jr.*, U.S. Attorney, and *R. Craig Lawrence*, Assistant U.S. Attorney.

*Les Alderman* was on the brief for *amicus curiae* Metropolitan Washington Employment Lawyers Association in support of appellant.

Before: GINSBURG, TATEL, and GARLAND, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* TATEL.

TATEL, *Circuit Judge*:  This case involves the interaction of two statutory regimes designed to benefit and protect federal employees with disabilities: the Rehabilitation Act of 1973 and the disability retirement provisions of the Federal Employees' Retirement System Act of 1986.  To prevail on a claim of disability discrimination under the Rehabilitation Act, plaintiffs must show that they could "perform the essential functions" of their jobs either "with or without reasonable accommodation."  By contrast, disabled employees able to fulfill the duties of their positions with reasonable accommodation are ineligible for disability benefits from the Federal Employees Retirement System. Here the district court held that appellant's receipt of federal disability retirement benefits precluded her from claiming that her employer, the U.S. Department of Agriculture, violated the Rehabilitation Act by failing to accommodate her disability.  We disagree.  Guided by the Supreme Court's analysis in *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795 (1999), we conclude (1) that claims for federal disability retirement benefits and disability-discrimination claims under the Rehabilitation Act do not so inherently conflict as to justify presumptively barring recipients of such benefits from asserting Rehabilitation Act claims, and (2) that a reasonable jury could find that the statements appellant and her doctor made in support of her application for disability benefits are consistent with her current claim that she could have performed the essential functions of her position with reasonable accommodation.  We thus hold that appellant's receipt of disability benefits bars neither her claim that her employer failed to accommodate her disability nor a related

set of claims that her supervisors retaliated against her for exercising her rights under federal antidiscrimination laws. Accordingly, we vacate the district court's entry of summary judgment on those claims and remand for the court to consider in the first instance whether appellant has raised trial-worthy issues of material fact.

**I.**

Because this case comes to us on appeal from a grant of summary judgment, we present the facts in the light most favorable to appellant, the nonmoving party in the district court, drawing all reasonable inferences in her favor. *See Pardo-Kronemann v. Donovan*, 601 F.3d 599, 604 (D.C. Cir. 2010).

Appellant Linda Solomon began working as a budget analyst at the U.S. Department of Agriculture ("Department") in 1997. *Solomon v. Vilsack*, 656 F. Supp. 2d 55, 57 (D.D.C. 2009). Solomon "has a long history of depression" and has also been diagnosed with agoraphobia, "an anxiety disorder characterized by the fear of being around other people." *Id.* at 57 & n.3. In late 2003 and early 2004, Solomon experienced a number of personal hardships that exacerbated her condition. *See id.* at 57. Her mental health during this period " 'was often unpredictable,' " and she had " 'intermittent and sporadic' problems sleeping, concentrating, and focusing." *Id.* (quoting Pl.'s Statement of Material Facts in Dispute & Material Facts Omitted by Def. 2). She also missed a considerable amount of work during the first ten weeks of 2004, using more than 110 hours of leave, including 50 hours of leave without pay. *Id.* at 58.

Solomon contends that notwithstanding her declining mental health, she succeeded in performing her duties at the Department. Solomon Decl. ¶ 9. Indeed, she "received a

superior performance rating in February 2004." *Id.* Since Solomon's depression made it difficult to maintain regular work hours, she would sometimes arrive at the office early, stay late, or work from home. *Id.* To block out distractions and help her concentrate, she also purchased and installed a privacy screen that covered the opening of her work cubicle. *Id.* ¶ 11. According to Solomon, her supervisor, Sylvia Booth, approved of both her working outside of regular office hours and her installation of the privacy screen. *Id.* ¶¶ 9, 11.

On March 2, 2004, Solomon emailed Booth, apologizing for her erratic leave and explaining that she was suffering from a relapse of her chronic depression. Booth responded that if Solomon believed that she would "need special accom[m]odations," she should provide medical documentation of her condition. Solomon then gave Booth a letter from her psychiatrist, Dr. Dennis Cozzens, stating that Solomon suffered from "chronic depression, anxiety and insomnia" and requesting that she be placed on "a flexible work schedule . . . to assist her with her medical treatment." Solomon also asked for a different work space where she would have more room and would be less bothered by her co-workers. On April 6, Deborah Lawrence, another supervisor, sent Solomon a memorandum asking that she submit further "medical documentation" by April 16 to demonstrate "the existence of [her] medical condition and the necessity for the [requested] changes in duty location and hours of duty." Although Solomon failed to provide Lawrence with additional medical documentation by this deadline, she alleges that the Department was nonetheless "fully aware of [her] medical problems." Pl.'s Statement of Material Facts in Dispute & Material Facts Omitted by Def. ¶ 19.

According to Solomon, Lawrence ordered her to take down her privacy screen and barred her from working past

6:00 p.m., thus "rescind[ing] the informal accommodations" Booth had previously granted. Appellant's Opening Br. 8. Solomon's difficulties at work soon came to a head. Although Solomon had planned to work late on the evening of April 23, a supervisor prohibited her from working past 5:30 p.m. Upset, she never returned to work.

Cozzens sent the Department several letters about Solomon after she stopped working. *Solomon*, 656 F. Supp. 2d at 58. On May 10, Cozzens informed the Department that Solomon's prognosis was "guarded." In a June 2 letter, he stated that although Solomon remained "unable to work due to the severity of her psychiatric symptoms," she might nonetheless be able to return to work in mid-July if afforded appropriate accommodations. Solomon also continued communicating with her supervisors even though she was no longer appearing for work. *Id.* On May 26, she sought permission "to telecommute on a part-time schedule." Her supervisors said no. She also requested advanced, paid sick leave. Although her supervisors again said no, they did allow her to participate in the Department's Voluntary Leave Transfer Program through which Solomon's co-workers donated 56 hours of sick leave. In addition, the Department granted Solomon over 1000 hours of leave without pay in 2004.

On August 30, Solomon submitted an application for disability retirement benefits through the Federal Employees Retirement System (FERS). The FERS statute provides that disability retirement benefits are available only to federal employees who have "complete[d] at least 18 months of civilian service" and have become "unable, because of disease or injury, to render useful and efficient service in [their] position." 5 U.S.C. § 8451(a)(1)(A)–(B). Under Office of Personnel Management (OPM) regulations, employees are

eligible for the benefits only if accommodating their disabilities would be "unreasonable." 5 C.F.R. § 844.103(a)(4). An official FERS handbook clarifies that a " '[r]easonable accommodation' is any action that [an] agency would be obligated to take under the Rehabilitation Act," which protects federal employees from discrimination based on their disabilities. U.S. Office of Pers. Mgmt., *CSRS and FERS Handbook for Personnel and Payroll Offices: Disability Retirement* 16, 52 (1998); *see also* 29 U.S.C. § 791.

The FERS application that Solomon completed, however, nowhere directly inquired whether she could work with reasonable accommodations, such as modified work hours or working conditions. *See* 42 U.S.C. § 12111(9) (defining the term "reasonable accommodation"); *see also* 29 U.S.C. § 791(g) (providing that section 12111(9)'s definition applies to suits under the Rehabilitation Act); 5 C.F.R. § 844.102 (defining the term "accommodation" for purposes of the regulations governing FERS disability benefits). Instead, the application asked, "What accommodations have you requested from your agency?" to which Solomon responded, "A flexible work schedule, relocation of work station, advanced sick leave and entry into the leave donor program." The form next asked, "Has your agency been able to grant your request?"—a question Solomon answered by checking the box marked "no." Solomon also stated in her application that she "became disabled for [her] position" in May 2003 and that she had "been unable to work" since April 2004 because her medical condition was "in crisis . . . [despite] continued treatment." In addition, Cozzens submitted a letter in support of Solomon's application asserting that "disability retirement [was] the only viable option in [her] case" in light of her severe depression.

OPM approved Solomon's application on December 16, and "she began receiving benefits (retroactive to the date of application) in January 2005." *Solomon*, 656 F. Supp. 2d at 58. Since then, she has not worked, and her doctor "has continued to represent [to OPM] that she cannot return to work because of her disability." *Id.* at 58–59.

On September 7, 2007, Solomon filed suit against the Secretary of Agriculture in the U.S. District Court for the District of Columbia, alleging that the Secretary violated her rights under the Rehabilitation Act by refusing to provide reasonable accommodations for her disability. *See* 29 U.S.C. § 791(g); 42 U.S.C. § 12112(a), (b)(5). (Throughout this opinion, we shall refer to this claim as Solomon's "accommodation claim.") Among other things, she claimed that by denying her requests for reasonable accommodations, her supervisors effectively "forced [her] to apply for disability retirement." Compl. ¶ 17. In addition, Solomon alleged that her supervisors unlawfully retaliated against her for engaging in activities protected by Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act of 1967 (ADEA), and the Rehabilitation Act. *See* 42 U.S.C. § 12203 (anti-retaliation provision of the Americans with Disabilities Act of 1990, which applies to actions under the Rehabilitation Act by virtue of 29 U.S.C. § 791(g)); *Gomez-Perez v. Potter*, 553 U.S. 474, 477 (2008) (holding that a federal employee who is retaliated against based on the filing of an age-discrimination complaint may assert a claim under 29 U.S.C. § 633a(a), the federal-sector provision of the ADEA); *Forman v. Small*, 271 F.3d 285, 297 (D.C. Cir. 2001) (noting that Congress's waiver of sovereign immunity in 42 U.S.C. § 2000e-16 for claims under Title VII includes claims of retaliation). Although Solomon also alleged that her supervisors discriminated against her based on age, her

counsel advised us at oral argument that she is no longer pursuing that claim.  *See* Oral Arg. Tr. at 13:12–20.

The Secretary moved for summary judgment on all claims.  Ruling on that motion, the district court began with the "threshold" question of whether a recipient of FERS disability benefits is barred from asserting a claim of disability discrimination under the Rehabilitation Act, which forbids federal agencies from engaging in any discrimination prohibited by the Americans with Disabilities Act of 1990 (ADA).  *Solomon*, 656 F. Supp. 2d at 59; *see also* 29 U.S.C. § 791(g).  The ADA's list of prohibited forms of discrimination includes failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of [its] business."  42 U.S.C. § 12112(b)(5)(A).  To be a "qualified individual" entitled to protection from discrimination under the ADA, an individual must be able to perform, with or without reasonable accommodation, "the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).  Thus, to prevail on her accommodation claim, Solomon must show that she could have performed the essential functions of her job as a budget analyst with reasonable accommodation.  *See Breen v. Dep't of Transp.*, 282 F.3d 839, 841 (D.C. Cir. 2002).  As explained above, however, OPM regulations provide that individuals able to fulfill the duties of their positions with reasonable accommodation are ineligible for FERS disability benefits.  *See* 5 C.F.R. § 844.103(a)(4).

The district court concluded that Solomon's claim for FERS disability benefits and her contention that she had been discriminated against in violation of the Rehabilitation Act

were "mutually exclusive." *Solomon*, 656 F. Supp. 2d at 62. It thus ruled that Solomon's application for and receipt of FERS disability benefits "precluded" her accommodation claim. *Id.* at 59. Relying on similar logic, the district court also barred Solomon from pursuing her claim that she had been retaliated against for engaging in activities protected by Title VII. Noting that her Title VII claim rested on the allegation that her supervisors retaliated against her by taking the " 'materially adverse' " action of denying her accommodation requests, the court reasoned that the supervisors' actions could not have been "adverse" if no reasonable accommodations could have been made for Solomon's disability. *Id.* at 62 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). Since individuals whose disabilities can be reasonably accommodated are ineligible for FERS disability benefits, the court held, Solomon's receipt of such benefits "precluded" her Title VII retaliation claim. *Id.* at 57, 62. Without separately addressing Solomon's distinct retaliation claims under the ADEA and the Rehabilitation Act, the district court granted the Secretary's motion for summary judgment in its entirety. *Id.* at 63.

Solomon now appeals, reiterating the arguments she made in the district court. Since the district court relied on the same rationale in holding that Solomon's accommodation and retaliation claims were barred—i.e., that recipients of FERS disability benefits are precluded from later claiming they could have performed the essential functions of their position with reasonable accommodation—our analysis will focus primarily on the question of whether Solomon's accommodation claim is foreclosed. If the district court erred in barring Solomon's accommodation claim, its holding with respect to her retaliation claims must fail as well.

## II.

Solomon argues that the district court adopted a "*per se* rule" that bars recipients of FERS disability benefits from asserting disability-discrimination claims under the Rehabilitation Act. Appellant's Opening Br. 22. She contends that our review of this legal issue is *de novo*. The Secretary, arguing that the district court grounded its decision on the equitable doctrine of judicial estoppel, contends that our review is limited to determining whether the district court abused its discretion in estopping Solomon's claims. *See New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001) (explaining that judicial estoppel is an equitable doctrine that seeks to "protect the integrity of the judicial process" by prohibiting a party who has successfully maintained a certain position in an adjudicative proceeding from assuming a contrary position in a subsequent proceeding) (internal quotation marks omitted); *see also Moses v. Howard Univ. Hosp.*, 606 F.3d 789, 797 (D.C. Cir. 2010) (noting that the circuits are split on the issue of whether district court applications of judicial estoppel are reviewed *de novo* or for abuse of discretion, but taking no position on the issue). We agree with Solomon that our review is *de novo*.

In *Cleveland v. Policy Management Systems Corp.*, the Supreme Court addressed a question closely resembling the one we face here—whether an individual who received Social Security Disability Insurance (SSDI) benefits was barred from pursuing an ADA claim based on her employer's failure to accommodate her disability. In doing so, the Court did not expressly rely on the doctrine of judicial estoppel. Although the Secretary nonetheless insists that the Court implicitly "appl[ied] the judicial estoppel doctrine," Oral Arg. Tr. at 30:12–17, and although some commentators seem to agree, *see* 18 James Wm. Moore, *Moore's Federal Practice* § 134.30, at 134-63 to 134-64 & nn.4.1–4.2 (3d ed. 2000); 18B

Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4477.1 (2d ed. 2002), we think it best to follow the Court's analysis exactly as it is set forth in *Cleveland*. That opinion requires us to resolve two legal questions as to which our review is plenary. *See United States v. Berry*, 618 F.3d 13, 16 (D.C. Cir. 2010) (noting that "questions of law" are reviewed *de novo*). First, do claims for FERS disability benefits and disability-discrimination claims under the Rehabilitation Act so inherently conflict that we should presumptively bar recipients of FERS disability benefits from asserting Rehabilitation Act claims? Second, even if no inherent conflict between the two claims exists, is the Secretary nonetheless entitled to summary judgment because Solomon has failed to reconcile her statements in her FERS application with her current claim that she could have worked with reasonable accommodations? In the following pages, we summarize the facts of *Cleveland* and then consider each of these questions in turn.

Carolyn Cleveland applied for and received SSDI benefits, for which an individual is eligible only if she suffers from "a disability so severe that she is 'unable to do [her] previous work' and 'cannot . . . engage in any other kind of substantial gainful work which exists in the national economy.' " 526 U.S. at 797 (quoting 42 U.S.C. § 423(d)(2)(A)). Much like Solomon in her application for FERS benefits, Cleveland represented in her SSDI application that she was "unable to work" due to her disability. *Id.* at 798 (internal quotation marks omitted). She then brought suit under the ADA, claiming that her former employer had discriminated against her based on her disability by failing to afford her reasonable accommodation. The Fifth Circuit held that applying for or receiving SSDI benefits "creates a *rebuttable* presumption" that the claimant or recipient is barred from pursuing a claim of disability discrimination

under the ADA. *Cleveland v. Policy Mgmt. Sys. Corp.*, 120 F.3d 513, 518 (5th Cir. 1997), *vacated*, 526 U.S. 795 (1999). Concluding that Cleveland failed to overcome that presumption, the Fifth Circuit affirmed the district court's grant of summary judgment in favor of her employer. *Id.* Although the Supreme Court rejected the Fifth Circuit's "special judicial presumption" that would ordinarily preclude SSDI recipients from asserting ADA claims, it nonetheless held that to survive summary judgment Cleveland had to explain on remand how her statements in support of her SSDI application were "consistent with her ADA claim that she could 'perform the essential functions' of her previous job, at least with 'reasonable accommodation.' " *Cleveland*, 526 U.S. at 798, 802.

To reach this conclusion, the Court began its analysis by asking whether a claim for SSDI benefits and an ADA claim are so "inherently" inconsistent as to justify a "special negative presumption" such as the one adopted by the Fifth Circuit. *Id.* at 802. Examining the SSDI program in detail, the Court concluded that there are "too many situations in which an SSDI claim and an ADA claim can comfortably exist side by side" to warrant such a presumption. *Id.* at 802–03. Accordingly, we too begin our analysis by asking whether there is such an "inherent[] conflict" between the receipt of FERS disability benefits and the elements of a discrimination claim under the Rehabilitation Act that we should adopt a "special judicial presumption" that "would ordinarily prevent a plaintiff like [Solomon] from successfully asserting [a Rehabilitation Act] claim." *Id.* at 802.

The district court began and ended its analysis with this "threshold issue." *Solomon*, 656 F. Supp. 2d at 59. Having determined that an " 'inherent conflict' " does indeed exist, *id.* at 60 (quoting *Chinchillo v. Powell*, 236 F. Supp. 2d 18, 27

(D.D.C. 2003)), the district court adopted what appears to be a conclusive, irrebuttable presumption that recipients of FERS disability benefits are "precluded" from asserting disability-discrimination claims under the Rehabilitation Act, *id.* at 59. In our view, however, disability-benefit and Rehabilitation Act claims are not so inherently inconsistent as to justify any sort of special presumption, whether rebuttable or irrebuttable, against recipients of FERS disability benefits who charge their employers with discrimination based on failure to accommodate. True, unlike the SSDI program considered in *Cleveland*, the OPM regulations governing FERS "take the possibility of 'reasonable accommodation' into account." *Cleveland*, 526 U.S. at 803. That is, individuals whose disabilities can be reasonably accommodated are ineligible for FERS disability benefits. 5 C.F.R. § 844.103(a)(4). In *Cleveland*, however, the Supreme Court did not just compare the text of the ADA, the Social Security Act, and their implementing regulations. Instead, it considered how the SSDI program is implemented in practice, emphasizing that the Social Security Administration never asks applicants about "the possibility of reasonable accommodation." *Cleveland*, 526 U.S. at 803.

So too here. The FERS application forms nowhere directly ask applicants whether they can perform the essential functions of their positions with reasonable accommodations. Standard Form 3112A, entitled "Applicant's Statement of Disability," instead asks applicants to "[g]ive the approximate date [they] became disabled for [their] position"; to describe how their disabilities "interfere[] with [the] performance of [their] duties, [their] attendance, or [their] conduct"; and to explain "any other restrictions" that their disabilities impose on their activities. The form also asks, "What accommodations have you requested from your agency?" and "Has your agency been able to grant your request?" Although

other parts of the FERS application packet do mention the possibility of reasonable accommodation, those references appear on forms completed by supervisors and other agency officials rather than by applicants themselves. For example, Standard Form 3112B, the "Supervisor's Statement," defines the term "accommodation" and gives examples of various "reasonable accommodation[s]" that may be offered to disabled employees. The forms completed and signed by the applicant contain no similar discussion of what constitutes a "reasonable accommodation." Indeed, only the agency, not the applicant, is asked, "Has reasonable effort for accommodation been made?" *See* OPM Standard Form 3112D: Agency Certification of Reassignment & Accommodation Efforts.

In sum, the FERS application forms nowhere require applicants to expressly represent that their disabilities cannot be reasonably accommodated. Therefore, as the Merit Systems Protection Board concluded in a decision addressing the very issue raised in this case, an individual's application for and receipt of FERS disability benefits do not necessarily constitute "an affirmation . . . that [her disability] could not be accommodated." *Lamberson v. Dep't of Veterans Affairs*, 80 M.S.P.R. 648, 657 (MSPB 1999). Of course, the Board's decision is not binding on us, and Solomon does not argue that we owe the decision any deference under cases such as *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43 (1984), *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944), or *Auer v. Robbins*, 519 U.S. 452, 461 (1997). Nonetheless, for the reasons given above, we agree with the Board that it would be inappropriate to preclude an individual from asserting a disability discrimination claim "merely because she either applied for or is in receipt of . . . FERS disability benefits." *Lamberson*, 80 M.S.P.R. at 658.

Like the Board, we believe that this conclusion accords with "Congress's intent that continuation of work with accommodation [be] preferred over disability retirement." *Id.* This intent is evident in 5 U.S.C. § 8451(a)(2), which requires an agency to consider reassigning an employee who applies for disability retirement to another vacant position and disqualifies an individual who declines a reasonable offer of reassignment from receiving FERS disability benefits. Since one of the forms of relief available under the Rehabilitation Act is reinstatement, *see* 29 U.S.C. § 794a(a)(1); 42 U.S.C. § 2000e-5(g); *Frye v. Aspin*, 997 F.2d 426, 428 (8th Cir. 1993), allowing recipients of FERS disability benefits to pursue Rehabilitation Act claims comports with Congress's preference that disabled employees continue working with accommodations rather than being nudged toward retirement. *See* H.R. Rep. No. 96-1167, at 206 (1980) ("If the employee is able to perform useful and efficient service in another position and a vacancy exists, the employee must be reassigned rather than retired."), *reprinted in* 1980 U.S.C.C.A.N. 5526, 5651.

Refusing to create a presumption that recipients of FERS disability benefits are precluded from asserting disability-discrimination claims also furthers the Rehabilitation Act's objective of "ensur[ing] that the Federal Government plays a leadership role in promoting the employment of individuals with disabilities." 29 U.S.C. § 701(b)(2). Individual lawsuits under the Rehabilitation Act are one mechanism for ensuring that the federal government stays faithful to this goal. Not only do such suits offer the possibility of compensation and other relief to individuals whose rights under the Act may have been violated, but they also reveal shortcomings in how federal agencies treat their disabled employees. Presumptively closing the courthouse doors to recipients of

FERS disability benefits attempting to assert Rehabilitation Act claims, however, "would force disabled individuals into an 'untenable' choice between receiving immediate subsistence benefits . . . or pursuing discrimination remedies." *Swanks v. Wash. Metro. Area Transit Auth.*, 116 F.3d 582, 586 (D.C. Cir. 1997) (quoting *Smith v. Dovenmuehle Mortg., Inc.*, 859 F. Supp. 1138, 1142 (N.D. Ill. 1994)). This "choice"—hardly a choice at all for individuals without independent means—is especially daunting because, except in certain limited circumstances irrelevant here, former federal employees have only one year from the date of their separation to apply for FERS disability benefits. 5 C.F.R. § 844.201(a)(1). Since Rehabilitation Act suits often last far longer than a year, individuals whose claims fail because their disabilities could not have been reasonably accommodated would likely find themselves time-barred from then applying for disability retirement benefits. Were we to accept the Secretary's argument and require federal employees to choose between immediate FERS benefits and uncertain Rehabilitation Act remedies, many disabled employees might well forgo meritorious Rehabilitation Act claims, thus shielding from liability federal agencies that fail to abide by their statutory duty to grant reasonable accommodations to their disabled employees. *See Swanks*, 116 F.3d at 586.

Indeed, under the district court's seemingly inflexible holding, agencies could force employees to seek disability retirement in an effort to escape their legal responsibility to provide reasonable accommodations. That, Solomon claims, is just what happened here. She alleges that she "was forced to seek disability retirement" because her supervisors refused to grant reasonable accommodations that would have permitted her to perform the essential functions of her job. Solomon Dep. Tr. at 147:1–2, 16–17 (Nov. 6, 2008); *see also* Compl. ¶ 17. If Solomon's allegation is true, the district

court's decision would grant immunity to Solomon's employer precisely because it succeeded in forcing Solomon to accept disability retirement benefits by denying her accommodations to which she was legally entitled. Such a holding, which conceals rather than reveals disability discrimination, disserves the Rehabilitation Act's purpose of ensuring that the federal government functions as a "model employer of individuals with disabilities." 29 C.F.R. § 1614.203(a).

For all these reasons, we conclude that recipients of FERS disability benefits are not presumptively barred from asserting Rehabilitation Act claims. Under *Cleveland*, however, our analysis cannot end there. Although the Supreme Court refused to adopt a special negative presumption that would generally bar SSDI recipients from pursuing ADA claims, it did hold that Cleveland could not "simply ignore the apparent contradiction" between her statements to the Social Security Administration and the elements of her ADA claim. *Cleveland*, 526 U.S. at 806. To avoid summary judgment, the Court explained, Cleveland had to reconcile this apparent discrepancy by providing an "explanation . . . sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or [Cleveland's] good-faith belief in, the earlier statement[s], [Cleveland] could nonetheless 'perform the essential functions' of her job, with or without 'reasonable accommodation.' " *Id.* at 807. Although the Supreme Court remanded for the district court to hear additional arguments and receive further sworn declarations on this issue, *id.*, the record in this case is sufficiently developed to allow us to determine whether Solomon has adequately reconciled the statements she made in her FERS application with her accommodation claim.

Solomon's statements in her FERS application could conflict with her accommodation claim in two ways. First, the statements could contain factual assertions that contradict essential elements of her claim. Second, even if no direct factual inconsistency exists, her FERS application could nonetheless be viewed as containing "context-related legal conclusion[s]" that conflict with her accommodation claim. *Id.* at 802.

Because the Secretary most strenuously argues that the second type of inconsistency exists in this case, we begin there. The Secretary contends that when considered "in the context of an application for FERS disability benefits," for which an individual is eligible only if her disability cannot be reasonably accommodated, Solomon's August 2004 statements to OPM constitute representations that no reasonable accommodation could have been made for her disability. Appellee's Br. 31. The Secretary's argument might have some force if there were evidence that Solomon knew when she applied for FERS disability benefits that individuals whose disabilities can be reasonably accommodated are ineligible for such benefits. But the record contains no such evidence. The application forms bearing Solomon's signature nowhere warn that disabled employees able to work with reasonable accommodations are ineligible for disability retirement, and the Secretary has pointed to no evidence that Solomon was otherwise apprised of this eligibility qualification. We thus have no basis for treating Solomon's statements in her FERS application as "context-related legal conclusion[s]" that she was unable to work even with reasonable accommodations. *Cleveland*, 526 U.S. at 802.

Turning to the other possible basis for a conflict, we consider whether Solomon's statements in her FERS

application are factually inconsistent with the elements of her accommodation claim. Asked to describe how her disability interfered with her job performance, Solomon responded that she had been "unable to work" since April 2004 "because [her] medical condition remain[ed] in crisis" despite treatment. Solomon also acknowledged that she had been "disabled for [her] position" since May 2003 and that her employer had been unable to grant her requested accommodations. According to Solomon, these statements merely reflect the fact that she was unable to work, and thus had no choice but to apply for disability retirement benefits, because her supervisors not only revoked informal accommodations that she had previously been granted—the privacy screen and permission to work outside of normal business hours—but also denied her requests for additional accommodations. *See* Pl.'s Statement of Material Facts in Dispute & Material Facts Omitted by Def. ¶ 66; Pl.'s Opp'n to Def.'s Mot. for Summ. J. 14, 17; Solomon Dep. Tr. at 48:14–15, 146:19–149:18. The statements, Solomon insists, do not amount to concessions that she would have been unable to work in the spring and summer of 2004 even if her supervisors had granted her accommodation requests.

We think Solomon has sufficiently reconciled any facial tension that might exist between the statements in her FERS application and her accommodation claim. Nowhere in Solomon's application did she directly discuss whether she could have worked with reasonable accommodations, nor did the application forms call for her to do so. Thus, her statements that she "became disabled for [her] position" in May 2003 and had been "unable to work" since April 2004 could be perfectly consistent with her current claim that she could have fulfilled the essential duties of her position if granted her requested accommodations. Solomon's answer "no" to the question, "Has your agency been able to grant

your request [for accommodations]?" could likewise be viewed as consistent with her accommodation claim. To be sure, as the Secretary suggests, Solomon's answer could mean that the Department was unable to grant the accommodations because they either were unreasonable or would have been ineffective in permitting Solomon to work despite her disability. But a jury could just as easily conclude that the Department was unable to grant the accommodations because Solomon's supervisors unreasonably denied her requests.

The Secretary points to statements made by Dr. Cozzens, Solomon's psychiatrist, in support of Solomon's FERS application that, according to the Secretary, are inconsistent with Solomon's accommodation claim. Even assuming the statements of a third party like Cozzens could bar Solomon's claim, *but cf. Pyramid Sec. Ltd. v. IB Resolution, Inc.*, 924 F.2d 1114, 1123 (D.C. Cir. 1991) (refraining from deciding whether the sham-affidavit rule, which requires parties to explain inconsistencies in their sworn statements, applies to non-party witnesses who have made inconsistent sworn statements), doing so would be inappropriate because Cozzens's statements, like Solomon's, can be reconciled with her accommodation claim. In an August 2004 letter to OPM, Cozzens stated that "disability retirement [was] the only viable option" for Solomon since her condition had shown "little improvement" over the spring and summer of 2004. Nowhere in that letter, however, did Cozzens mention the possibility of reasonable accommodations. Moreover, in his sworn declaration in this litigation, Cozzens states that Solomon "could have returned to work in July[] 2004" if the agency had afforded her certain accommodations, "such as giving her a quiet work space and allowing her to work flexible hours and/or to work at home." Cozzens Decl. ¶ 7; *see also id.* ¶ 6 (explaining that disability retirement was "the only option left" for Solomon in August 2004 because her

supervisors had "refused her request for advance sick leave and denied her the opportunity to work part-time and/or to work at home").

Since Solomon has demonstrated that a reasonable jury could find that the statements she and Cozzens made in support of her application for FERS disability benefits are consistent with her current claim that she could have worked in the spring and summer of 2004 with reasonable accommodation, her accommodation claim is not foreclosed under the standard set forth in *Cleveland*. *See Cleveland*, 526 U.S. at 807. This is not to say that Solomon's and Cozzens's statements in support of Solomon's FERS application are irrelevant to her accommodation claim. Indeed, given Solomon's and Cozzens's August 2004 representations to OPM, a jury might well be skeptical of their current positions regarding Solomon's ability to work. *See Whitbeck v. Vital Signs, Inc.*, 159 F.3d 1369, 1372–74 (D.C. Cir. 1998) (holding that information contained in applications for disability insurance benefits may be relevant to a plaintiff's claim that her employer failed to reasonably accommodate her disability); *Swanks*, 116 F.3d at 587 (noting that claimants' statements in support of their applications for SSDI benefits may be relevant in ADA suits). We hold only that a reasonable jury could find that their representations to OPM are not inconsistent with the elements of Solomon's accommodation claim.

Our conclusion is reinforced by the fact that, despite the Secretary's protestations to the contrary, allowing Solomon's claim to proceed is not likely to unfairly benefit Solomon or unduly prejudice the government. Although the issue of remedies is not before us, the parties appear to agree that any award of back pay Solomon might obtain on her accommodation claim could be reduced by the amount of

FERS disability benefits she has received. *See* Appellant's Reply Br. 10 n.5; Oral Arg. Tr. at 40:21–41:10. As we have previously recognized, offsetting awards in disability-discrimination cases by the amount of disability benefits the plaintiff has received "may provide a way to prevent windfall recoveries while guaranteeing disabled persons the full protection" of both federal antidiscrimination laws and programs designed to provide assistance to individuals whose disabilities prevent them from working. *Swanks*, 116 F.3d at 587.

This brings us to Solomon's claims that her supervisors unlawfully retaliated against her for engaging in activities protected by Title VII, the ADEA, and the Rehabilitation Act. Addressing only Solomon's Title VII retaliation claim, the district court rejected the contention that Solomon's supervisors retaliated against her by taking the " 'materially adverse' " action of denying her accommodation requests. *See Solomon*, 656 F. Supp. 2d at 62 (quoting *Burlington N. & Santa Fe Ry.*, 548 U.S. at 68); *see also Baloch v. Kempthorne*, 550 F.3d 1191, 1198 (D.C. Cir. 2008) ("To prove retaliation, the plaintiff generally must establish that he or she suffered (i) a materially adverse action (ii) because he or she had brought or threatened to bring a discrimination claim."). Reasoning that the Department's failure to grant Solomon accommodations could not have been " 'adverse' if she could not reasonably have been accommodated," the district court held that Solomon's application for and receipt of FERS disability benefits "precluded" her Title VII retaliation claim because she would have been ineligible for such benefits if she could have worked with reasonable accommodations. *Solomon*, 656 F. Supp. 2d at 57, 62. We reject this holding for the same reason we have concluded that Solomon is not precluded from pursuing her accommodation claim. *See supra* pp. 10–22. Since a reasonable jury could find that

Solomon's statements in support of her FERS application are consistent with her current contention that she could have worked in the spring and summer of 2004 if afforded reasonable accommodations, neither her accommodation claim nor her retaliation claims are foreclosed.

## III.

The Secretary urges us to affirm the district court's grant of summary judgment on alternative grounds. Specifically, the Secretary argues that the undisputed material facts demonstrate that no reasonable accommodation would have enabled Solomon to perform the essential functions of her position and that her supervisors did not retaliate against her for engaging in statutorily protected activities. *See* Fed. R. Civ. P. 56. But the district court never reached these alternative arguments, grounding its decision instead on its "threshold" determination that recipients of FERS disability benefits are precluded from pursuing claims of discrimination under the Rehabilitation Act. *Solomon*, 656 F. Supp. 2d at 59. Lacking the benefit of the district court's analysis of whether genuine issues of material fact exist that would preclude the entry of summary judgment, we believe the most prudent course is to remand for the district court to consider this issue in the first instance. *See Steele v. Schafer*, 535 F.3d 689, 693, 695–96 (D.C. Cir. 2008) (declining to decide whether the government was entitled to summary judgment on alternative grounds not reached by the district court and remanding for the district court to consider the government's arguments).

For the reasons given above, we vacate the district court's entry of summary judgment with respect to Solomon's accommodation and retaliation claims and remand for further proceedings consistent with this opinion.

*So ordered.*